**SLUSHER et al. v. LOCKE et al.**

Court of Appeals of Kentucky.
Nov. 9, 1951.

Will C. Hoskins, Hyden, for appellant.

William Dixon, A. E. Cornett, Hyden, for appellee.

STEWART, Judge.

This suit was instituted in the Leslie Circuit Court by Sudie W. Locke, as statutory guardian of Joe Edward Slusher, age 16, to cancel a deed of conveyance from Joe Slusher and Sarah Slusher, his wife, to Victor Slusher and Cloe S. Nantz on the alleged grounds that both the deed and the certificate of acknowledgment were forgeries. The Chancellor adjudged the conveyance to be a nullity and ordered it set aside because it was not genuine. Defendants appeal.

The evidence discloses that Joe Slusher died intestate on the 31st day of July, 1943, survived by his wife, Sarah Slusher, a son, Victor Slusher, a daughter, Cloe S. Nantz, and a grandson, Joe Edward Slusher, and that, at the time of his decease, he owned five tracts of land in Leslie County of the approximate value of $15,000. Hereinafter we shall refer to the foregoing persons by their Christian names. On June

24, 1944, Victor caused a deed to be recorded in the county court clerk's office in Leslie County which showed on its face that his father had conveyed to him and his sister, Cloe, all of his land except one small parcel. This instrument, filled out on a printed form and dated April 14, 1943, was purportedly acknowledged on the same date before Lucy Slusher, the wife of Victor, who affixed the title of deputy county court clerk after her name.

Joe Edward's father, George Slusher, was killed on September 12, 1935. Thereafter his mother remarried and the boy, becoming dissatisfied in the new home of his mother, went to live with his grandfather three years before the death of the latter. He remained in the Slusher home place until about two years after the decease of his grandfather. Joe appeared to be very fond of his grandson; and, during his last illness, according to proof given by a neighbor, when he was asked if he was going to make Joe Edward a deed for his part of the land Joe's reply was that he did not intend to convey any of his land to anybody but that "they can't beat Joe Edward out of his part." Roscoe Belcher, a local merchant, testified that Victor was in his store a few months after the death of his father. On being questioned if his father had left a deed or will, the son answered that "he did not know whether or not he did." Tilda Mae Belcher and Lucy worked in Baltimore, Maryland, during the summer of 1944, and they also roomed together. Mrs. Belcher testified that one evening a letter from Victor was delivered to Lucy while both were in their room. "Lucy was taking a bath", she said, "and she told me to read the letter to her." The communication requested Lucy "to hurry and come home, that they could not make the deed until she got there." According to this same witness, Lucy left Baltimore on June 20, 1944, for her home. This was almost a year after the death of Joe and just four days before the deed was recorded. Sometime in April of 1944, and after his father's death, Victor in a conversation with John M. Locke, the uncle of Joe Edward, told Locke: "I would love to get you to help me fix up something

about some of the land my daddy wanted me to have. If you will help me out on the land business, I'll pay you good for your trouble." When Locke informed Victor he would assist him with anything that "was on the square", Victor, he stated, "changed the subject and did not mention it again."

A bank president, an attorney and two merchants, all of whom had known Joe from 10 to 20 years and had dealt with him in a business way, testified that they were familiar with decedent's handwriting from having seen him write his name; that Joe could write only to the extent of barely signing his name; and that it was the opinion of each that the signature appearing on the deed was not that of Joe.

There is irreconcilable conflict in the testimony introduced to uphold the conveyance. According to Victor, the instrument, after having been written by Lucy, was signed by Joe at his home around noon on April 14, 1943, and at a time that Sarah, Lucy, Boyd Duff, Henry Simpson, John Nolan "and maybe two or three more" were present. Sarah stated that she signed the deed with Joe. She did not tell any one that the deed had been executed because: "He said not tell that; they would be mad; and let them find it out for themselves * * *." The depositions of Duff, Simpson and Nolan corroborated in detail the testimony of Victor. They added, however, that the deed was executed out on the porch of the Slusher home. All of these persons—Lucy did not testify—could recall no one else who was there on that occasion.

Nine months later, the depositions of Caleb Brock, Frank Nolan and John Brock were taken in behalf of appellants. Caleb Brock testified that "I just stopped there (at the Slusher home) when he made the deed to them"; that he saw Joe get up from his bed and sign the instrument near the fireplace; and that this occurred in the morning when nine or ten persons were in the room. He remembered that Victor, his wife, Lucy, Archie Brock, Caudill Brock, Oscar Brock and Delta Brock were there at the same time. Frank Nolan, son of John Nolan, who gave his deposition along

with Caleb Brock and John Brock, testified that he was a casual passer-by who chanced to stop at the Slusher home when Joe was in the act of signing the deed. He said the instrument was signed by Joe inside his house near the fireplace. Nine or ten persons were present, he asserted, and he was able to name John Nolan, Henry Simpson, Caleb Brock, Caudill Brock and Victor who were there, but he did not recollect that Lucy was present at the time. John Brock, a brother of Caleb Brock, testified that he was working for Joe on the day the latter allegedly signed the deed. He was asked if he knew of any legal paper that Joe signed at that time and his answer was: "No, I went back to work and they got me to turn some ground and he (Joe) come out and drove the mule until twelve o'clock and he got sick and went to the house and then he sent the boy, Joe Edward, to drive the mule." Levi Nantz, the husband of Cloe, testified that he had taught Joe Slusher, in 1915 and 1916, to write "by having letters indented so he could trace them." It was his opinion that the signature of Joe on the deed was genuine.

Victor admitted that he had participated at an earlier period of his life in the robbery of a box car which had implicated his father because the stolen goods were later found on his father's farm. He and his father were convicted and sent to prison, but Victor said his father was an innocent victim of the crime, since he did not know the son had hidden the property on his father's premises. It was also proven that Boyd Duff had been convicted of homicide and Henry Simpson of hog stealing, and that both had served prison terms. Witnesses testified that the general moral reputation of John Nolan and Sarah was bad.

Appellants insist that appellee did not sustain her allegations by clear and convincing proof that the signature of Joe and the certificate of acknowledgment to the deed were forgeries.

 It is true that the certificate of an officer authorized to take acknowledgments imports absolute verity and the effect of the certificate must be destroyed before a plea of non est factum is available. Atkins'

Guardian v. McCoy, 275 Ky. 117, 120 S.W.2d 1019. In the case at bar the evidence as to both the execution by the purported grantor and the acknowledgment of the alleged deed is so interwoven it cannot be separated or considered independently. It may not be, for, under the peculiar circumstances here, we may well conclude that falsus in uno, falsus in omnibus. See Conley v. Coburn, 297 Ky. 292, 179 S.W.2d 668.

 The deed under consideration arose out of suspicious circumstances. Its existence was a secret until its recordation fourteen months after its purported execution. The evidence fails to disclose any good reason why Joe should have conveyed practically all of his real estate to appellants to the exclusion of his grandson. It was very definitely proven that a mutual, natural affection existed between them and it was shown beyond dispute, while Joe lay on his death bed, that he wanted Joe Edward to share in the land. One of the most significant occurrences which tends strongly to indicate that the conveyance is not genuine relates to the letter Victor wrote to his wife, then in Baltimore, requesting her to hurry home because the deed could not be made in her absence. Lucy came back to Leslie County and within a day or so the deed made its appearance for the first time with the acknowledgment showing, as we have mentioned, that it had been subscribed to before her. Lucy did not testify as a witness and explain her acts. Nor did appellants attempt by the testimony of anyone to clear up Lucy's part in the transaction. When we examine the evidence of Victor, his mother, Boyd Duff, Henry Simpson and John Nolan the testimony of these witnesses is so identical, particularly as to minute details, as to raise more than a suspicion. Caleb Brock, John Nolan and John Brock contradict each other so noticeably in their depositions that their testimony has no probative value.

 Each case presenting issues like the one at bar must be decided according to the particular evidence developed in it. We are also mindful of the fact that a recorded instrument, bearing a certificate of

acknowledgment, carries with it a strong presumption of its validity. But we are of the opinion that the evidence here, taken as a whole, strongly supports the decision of the Chancellor.

Wherefore, the judgment is affirmed.